United States District Court

Southern District of Florida

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Andrew Shabshelowitz aka
Andy Shabshelowitz and
Laurette Shabshelowitz, individually
and on behalf of others similarly
situated,

            Plaintiffs,

      vs.

Old Dominion Insurance Company
Pilot Catastrophe Services, Inc.
Sweet Claim Service, Inc.
Aon National Flood Services, Inc.
Federal Emergency Management Agency
William B. Long, Administrator,
  Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Civil Action No:

Complaint and
Demand for Jury
Trial

FILED by_____ D.C.

OCT 0 9 2018

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – KEY WEST

## INTRODUCTION

1.   Plaintiffs, Andrew Shabshelowitz and Laurette Shabshelowitz, (together "Plaintiffs") bring this action against Defendant, Old Dominion Insurance Company ("Old Dominion") and Federal Emergency Management Agency ("FEMA"), individually and on behalf of all others similarly situated as a Class Action, with regard to Counts I, II and III and individually against Old Dominion, Pilot Catastrophe Services, Inc. ("Pilot"), Sweet Claim Service Inc. ("Sweet"), Aon National Flood Services, Inc. ("NFS"), FEMA and

1

William B. Long, as Administrator of the Federal Emergency Management Agency with regard to Counts IV through XI.

2. This is a complaint seeking relief, equitable restitution and declaratory relief to redress the Defendants', Old Dominion's and FEMA's conduct in selling misleading and fraudulent flood insurance contracts to Plaintiffs on behalf of themselves and members of a proposed class of persons and entities ("individual Florida condominium flood policyholders") who purchased individual condominium building primary flood coverage on condominiums located within the State of Florida through FEMA policies that were duplicative, excess and provided only an illusion of coverage, and individually against Old Dominion, Pilot, Sweet, NFS and FEMA for negligently servicing flood insurance contracts, failure to comply with federal law in administering the National Flood Insurance Program ("NFIP"), failure to honor contractual obligations explicitly set forth in, or arising from flood insurance policies sold pursuant to the National Flood Insurance Program ("FEMA policies") and issued to Plaintiffs, common law fraud with regard to the sale of FEMA flood insurance policies by Old Dominion and FEMA and individually in his capacity as Administrator of FEMA against William B. Long for failure to comply with 42 U.S.C. Section 4019(c).

<u>JURISDICTION AND VENUE</u>

3. Jurisdiction is proper under the National Flood Insurance Act

2

of 1968, 42 U.S.C. 4001, and federal common law, as well as this Court's supplemental/pendent jurisdiction. Venue is proper in this Court pursuant to 28 U.S.C. Section 1331. This Court also has subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 1332(d) because the aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 putative class members defined below; and there are numerous members of the proposed class who are citizens of a state different from Defendants. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367.

<u>PARTIES</u>

4.   Plaintiffs, Andrew Shabshelowitz and Laurette Shabshelowitz, are of full age of majority and residents of Westport, MA.

5.   Old Dominion Insurance Company ("Old Dominion") is a Florida Profit Corporation with a principal address of 4601 Touchton Road East, Suite 3400, Jacksonville, FL 32246 and authorized to do and/or doing business in Monroe County, FL and subject to the jurisdiction of this Honorable Court. Old Dominion which at all times pertinent herein was the Write-Your-Own ("WYO") insurer pursuant to the National Flood Insurance Act of 1968 ("NFIA") of Andy Shabshelowitz and Laurette Shabshelowitz for the property located at 201 E Ocean Drive, Unit 3-105, Key Colony Beach, FL 33051, which issued a flood insurance policy to Plaintiffs.

3

6.   Pilot Catastrophe Services, Inc. is an adjusting company authorized to do and/or doing business in Monroe County, FL and subject to the jurisdiction of this Honorable Court.  Pilot was at all times pertinent herein the flood adjuster for the condominiums located at 201 E Ocean Drive and the complex for the master policy issued to the Casa Clara Condominium Association.

7.   Sweet Claim Service, Inc. is an adjusting company that is an Oklahoma corporation with a business address of 207 South Pine Street, Talala, OK that did business in Monroe County, FL and is subject to the jurisdiction of this Honorable Court.  Sweet at all times pertinent herein was the flood adjuster for the condominium located at 201 E Ocean Drive-Unit 3-105 with regard to the flood insurance policy issued by Old Dominion.

8.   NFS is a Delaware for profit corporation that services the flood insurance claims for Old Dominion, other flood insurers and FEMA with an address of PO Box 2057, Kalispell, MT 59903.

9.   FEMA is an agency of the United States Department of Homeland Security with an address of 500 C St., SW, Washington, D.C. 20472.

10.  William B. Long is the Administrator of the Federal Emergency Management Agency with an address of 500 C St., SW, Washington, D.C. 20472.

4

## FACTUAL ALLEGATIONS

11.  This action arises from Defendants, Old Dominion and FEMA, sale of misleading and/or fraudulent insurance policies and failure to honor contractual obligations explicitly set forth in, or arising from, flood insurance policies issued to Plaintiffs and members of the proposed class pursuant to the National Flood Insurance Program ("FEMA policies").

12.  Plaintiffs purchased individual flood insurance policies from Old Dominion that provided building coverage in the amount of $104,100 to rehabilitate and restore their flood-damaged condominium to pre-loss condition and were denied coverage expressly provided by contract and rights implied under contract.

13.  During the policy period of the Plaintiffs, a FEMA policy was sold to Casa Clara Condominium Associates by American Bankers Insurance Company of Florida and premiums were collected thereon that provided for building coverage for the Plaintiffs' individual condominium unit in the amount of $208,416.66.

14.  Under the National Flood Insurance Program, an individual condominium unit can be insured with building coverage in an amount not greater than $250,000.

15.  Old Dominion and FEMA regularly and knowingly have sold and continue to sell and collect premiums on flood insurance policies

where building coverage on the insured property is in excess of the amount allowed under the National Flood Insurance Program.

16.  Old Dominion and FEMA regularly have sold and continue to sell and collect premiums on flood insurance policies on condominium units in amounts for which no insurance coverage could legally be provided.

17.  The National Flood Insurance Program provides for primary flood insurance coverage and not excess insurance.

18.  By definition, a primary insurance policy is a property or liability policy that covers up to the policy's limit (usually after deductibles) whether or not other policies cover the same risk.   In contrast, excess insurance is triggered only when the primary insurance is exhausted.

19.  Old Dominion and FEMA sold a misleading insurance product in that building coverage was sold and purchased as primary coverage but such primary building coverage was not provided within the policies.

20.  The insurance policies sold by Old Dominion and FEMA contained clauses that were void and unenforceable under federal law, specifically in violation of 42 U.S.C. Section 4019(c).

21.  As a result of Old Dominion's, FEMA's and other Write Your Own Insurance Companies sales of misleading insurance policies and policies that did not provide primary coverage or enforceable coverage, Plaintiffs and the Class have suffered injury in fact, incurred hundreds of millions of dollars in excess flood insurance premiums over the past five years, and have otherwise been harmed by the conduct of Old Dominion, FEMA and other Write Your Own Insurance Companies.

22.  As a result of Old Dominion's, FEMA's and other Write Your Own Insurance Companies sales of misleading, duplicative, excess and/or unenforceable insurance policies, Old Dominion and other Write Your Own Insurance Companies were improperly paid millions of dollars of commissions on flood insurance premiums for nonexistent, illusory and/or unenforceable insurance during the past five years.

23.  On or about September 10, 2017, Hurricane Irma passed through the Florida Keys and caused massive damage, including storm water, flood and wind damage, to component parts and contents of Plaintiffs' condominium located at 201 E Ocean Drive, Key Colony Beach, FL 33051, being Unit 3-105 in the condominium complex comprised of three separate buildings containing eighty four individual condominium units and known as Casa Clara Condominiums.

24. Damage was incurred to all three buildings, some of the individual condominium units and to the common elements of the

7

three buildings of Casa Clara Condominiums.

25.  At all relevant times hereto, Plaintiffs, Andrew Shabshelowitz and Laurette Shabshelowitz owned the contents within Unit 3-105 and Plaintiff Laurette Shabshelowitz owned the individual condominium Unit 3-105.

26.  At all relevant times material hereto, Plaintiffs had an insurance contract in effect with Old Dominion for flood dwelling and contents, including a provision within the policy for condo loss assessment coverage.

27.  The applicable insurance contract specifically provided coverage for the incident that occurred on and after September 10, 2017.

28.  Plaintiffs' condominium unit, as a result of the above sudden and accidental event was severely damaged and received flood waters that caused severe damage to their property.

29.  Plaintiffs timely notified their flood insurance carrier and their wind insurance carrier shortly after Hurricane Irma.

30.  Plaintiffs timely filed a proof of loss with their flood insurance carrier.

31.   The NFIP Flood Insurance Claims Handbook issued by FEMA, FEMA fact sheets and the NFIP Desk Reference Guide that govern the conduct of flood adjusters for policies issued under the National Flood Program all provide for policyholders receiving estimates of their damages from flood.

32.   The National Flood Insurance Program Claims Handbook FEMA-687 is provided to Plaintiffs and other policyholders with the purchase of their policies.

33.   The National Flood Insurance Program Claims Handbook FEMA-687 specifically states that "The adjuster uses his or her understanding of the extent, type, and location of the damage along with knowledge gained from his or her visit(s)-including any documentation you provided-to complete a detailed estimate of the flood event-related damage.   You will receive a copy of this estimate.   It is important that you review the estimate and speak with the adjuster concerning any questions you have about the estimate; or if you identify items that he/she omitted or require further review.   The estimate serves as a guide when obtaining bids from licensed professional contractors for repair work."

34.   The NFIP Flood Insurance Manual dated April 1, 2016 provides for the insured to receive a copy of the estimate.   The applicable section reads as follows: "The adjuster will use the information gained from the visit(s), and the documentation the insured has

9

provided, to complete a detailed estimate of damages.  The insured will receive a copy of the estimate.  It is to be used as a guide when the insured asks for bids for repair work from licensed professional contractors.  The adjuster may ask if the insured would like to request an advance payment from the insurer."

35.  The flood adjuster from Sweet assessed the flood damage to Plaintiffs' contents in Unit 3-105 and provided an estimate of damage to Plaintiffs' contents within Unit 3-105.

36.  The flood adjuster from Sweet was requested by Plaintiffs to provide an estimate of damage to the building portion of Unit 3-105.

37.  The flood adjuster from Sweet refused to provide to Plaintiffs an estimate of damage to the building portion of Unit 3-105.

38.  The flood adjuster from Sweet improperly determined that the Plaintiffs policy did not provide coverage for the loss to the building portion of their unit.

39.  The flood adjuster from Sweet improperly determined that the Plaintiffs had purchased excess building coverage and that the loss to the building portion of their unit would be covered by the Master Flood policy.

40. The flood adjuster from Pilot refused to provide an estimate of damage directly to the Plaintiffs.

41. The flood adjuster from Pilot Claims Service did not properly perform an inspection of the Plaintiffs' unit.

42. The flood adjuster from Pilot Claims Service did not properly perform an assessment of damages to the Plaintiffs' unit.

43. The flood adjuster from Pilot Claims Service provided an assessment of damages to the Plaintiffs' unit to Casa Clara Condominiums in the amount of $100,361.57.

44. On November 7, 2017, Old Dominion notified Plaintiffs that their claim for building coverage was denied and stated as the reason for the denial "The SFIP prohibits duplicate coverage".

45. Old Dominion's notification of November 7, 2017 was erroneous as it failed to comply with FEMA requirements that the appeal procedure be provided with said notification.

46. On December 26, 2017, Old Dominion notified Plaintiffs that their claim for building coverage was denied and stated as the reason for the denial "General Conditions-C. Other Insurance
2. If there is other insurance in the name of your condominium association covering the same property covered by this policy, then

11

this policy will be in excess over the other insurance."

47.  As of December 26, 2017, the flood insurance claim of Casa Clara Condominium Associates for damages to Unit 3-105 had not been approved.

48.  As of December 26, 2017, the flood insurance claim of Casa Clara Condominium Associates for damages to Unit 3-105 had not been paid.

49.  Subsequent to December 26, 2017, Casa Clara Condominium Associates received payment for the damages assessed by Pilot to Unit 3-105 under its American Bankers Insurance Company of Florida insurance policy.

50.  Plaintiffs made a request to Casa Clara Condominium Associates on August 24, 2018 to be reimbursed $43,945.08 for costs that Plaintiffs had incurred to that date in repairing their unit.  As of this date, no reimbursement has been received.

51.  The flood adjuster from Pilot did not properly perform an assessment of flood damages to the units within the Casa Clara Condominium complex.

52.  The flood adjuster from Pilot assessed flood damage to common areas and to twenty four units within the three buildings at Casa

Clara Condominiums including presumptatively to the individual Unit 3-105.

53. Pilot did not perform its assessment of damage to the Casa Clara Condominium complex including but not limited to Unit 3-105 in accordance with professional standards and/or policy guidelines.

54. Pilot issued reports to NFS that were clearly erroneous.

55. NFS did not properly review the reports that were provided to it by Pilot.

56. NFS improperly determined that Plaintiffs had purchased duplicate coverage and unenforceable coverage under the policy issued by Old Dominion.

57. NFS improperly determined that Plaintiffs had purchased excess coverage under the policy issued by Old Dominion.

58. NFS improperly refused to comply with the provisions of federal law, specifically 42 U.S.C. Section 4019(c).

59. NFS did not properly review the Proof of Losses submitted by the Plaintiffs.

60. NFS improperly determined that there was no condominium loss

assessment coverage available under the policy issued by Old Dominion.

61. NFS improperly refused to provide its claim file to the Plaintiffs in an unfair practice to deny Plaintiffs the ability to properly present their appeal claim to FEMA.

62. At all times material hereto, Plaintiffs have fully cooperated with Old Dominion, provided access to the unit, as well as claim documentation to the best of their ability.

63. The flood insurance policy sold by Old Dominion provides coverage for condo loss assessments for flood damage to common areas.

64. Old Dominion has refused to pay Plaintiffs for condo loss assessments for flood damage to common areas.

65. Old Dominion utilizes NFS as its agent for processing flood insurance claims.

66. NFS is not an agency of the United States.

67. NFS was negligent in its handling of the flood insurance claims for Unit 3-105 at Casa Clara Condominiums and the Casa Clara Condominium complex.

14

68.  Due to negligence and mishandling of the flood claims by Pilot, Sweet, Old Dominion and NFS, the Plaintiffs suffered undue delay in restoring their unit and as a result were deprived of the use of same.

<u>CLASS ACTION ALLEGATIONS</u>

69.  Plaintiffs bring this suit in part as a class action on behalf of themselves and on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure, Rule 23(a), 23(b)(2) and/or 23(b)(3).   This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the provisions of Rule 23.

70.  Plaintiffs seek to represent the following "Class";

All persons and entities in the United States who purchased individual condominium building coverage on Florida condominiums through the SFIP flood insurance policy.

71.  Excluded from the Class are the Judge(s) to whom this case is assigned and any member of the Judge's immediate family, along with Defendants' employees, officers, directors, agents, and representatives and their immediate family members.  Also excluded are those persons who have suffered personal injuries as a result of the facts herein alleged.

72.  NUMEROSITY: Members of the Class are so numerous that joinder

15

of all members is impracticable.  While the exact number of Class members remains unknown at this time, upon information and belief and based upon a reply from FEMA to a Freedom of Information request by Plaintiffs to FEMA, there are approximately fifty seven thousand (57,000) putative Class members who purchased SFIP policies with building coverage for their condominiums located in Florida, which policyholders are generally ascertainable by appropriate discovery.

73.  COMMONALITY:  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

a. Whether Old Dominion and/or FEMA engaged in the conduct alleged herein:

b. Whether Old Dominion and/or FEMA sold fraudulent insurance policies;

c. Whether Old Dominion and/or FEMA sold misleading insurance policies;

d. Whether Old Dominion and/or FEMA collected premiums for insurance coverage that was duplicative, excess and/or provided only an illusion of coverage;

e. Whether Plaintiffs and other Class members are entitled to recover refunds of premiums paid for building coverage under individual SFIP condominium policies.

74. Typicality:   Plaintiffs' claims relating to Counts I, II and III are typical of those of the other Class members, because, inter alia, all members of the Class were injured through common misconduct described above and were subject to the excess insurance premiums charged and collected on the flood insurance policies sold to the Plaintiffs and the Class.   Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

75. Adequacy of Representation:   Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs' seek no relief that is antagonistic or adverse to the members of the Class and infringement of the rights and the damages that they have suffered are typical of other Class members. Plaintiffs will retain counsel experienced in complex class action litigation upon certification of the Class and Plaintiffs intend to prosecute this action vigorously.

76. Superiority:   The class litigation is an appropriate method for fair and efficient adjudication of the claims concerning excess premium and fraudulent sales practices with regard to the Florida condominium policyholders who purchased individual building coverage through the FEMA SFIP policy.  Class action treatment is superior to all other methods for the fair and efficient

17

adjudication of the controversy alleged herein; it will permit a large number of Class members to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence, effort and expense that tens of thousands of individual actions would require.  Class action treatment will permit the adjudication of relatively modest claims by certain Class members, who could not individually afford to litigate a complex claim against large corporate defendants and a US Government agency.  Further, even for those Class members who could afford to litigate such a claim, it would still be economically impractical.

77.  The nature of this action and the nature of laws available to Plaintiffs and the Class make the use of the class action device particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged because Old Dominion and FEMA would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of

this litigation.

78.   Plaintiffs reserve the right to modify or amend the definition of the proposed class and subclasses before the Court determines whether certification is appropriate and as the parties engage in discovery.

79.   The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

80.   Individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable.  While the aggregate damages incurred by each Member resulting from Old Dominion's and FEMA's wrongful conduct are too small to warrant the expense of individual suits, the likelihood of individual Class members prosecuting separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual Class members do not have a significant interest in individually controlling the prosecution of separate actions, and the individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system

19

resulting from multiple trials of the same factual issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. A class action in this matter will avoid case management difficulties and provide multiple benefits, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each Class member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

81. Notice of a certified class action and of any result or resolution of the litigation can be provided to Class members by first-class mail, email, or publication, or such other methods of notice as deemed appropriate by the Court.

82.     Plaintiffs do not anticipate any difficulty in the management of this litigation.

<u>CLASS CAUSES OF ACTION</u>

<u>COUNT I</u>

**BREACH OF CONTRACT AND EXPRESS WARRANTY**

83. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

84.   Defendants, Old Dominion and FEMA, contracted and expressly warranted to Plaintiffs and the Class members to provide building coverage under the flood insurance policies to their individual condominiums for flood damage losses that were purchased by Plaintiffs and the Class.

85.   Defendants, Old Dominion and FEMA, breached this contract and express warranty to Plaintiffs and the Class members to provide building coverage under the flood insurance policies to their individual condominiums for flood damage losses that were purchased by Plaintiffs and the Class.

86.   As a result of Defendants, Old Dominion and FEMA, actions, Plaintiffs and Class members have suffered damages including but not limited to premiums paid for non-existent, duplicate and excess flood insurance coverage.

87.   Defendants, Old Dominion and FEMA, attempts to disclaim or limit their contractual obligations and warranties are unconscionable and unenforceable under the circumstances here. Specifically, knowingly selling an insurance policy product that was misleading to the Plaintiffs and Class members and upon a significant casualty denying coverage for that which was purchased.

88.   Plaintiffs and Class members have fully complied with their contractual obligations under the policies and paid premiums based

upon the coverage that was sold to the Plaintiffs and Class members.

## COUNT II

### COMMON LAW FRAUD

89. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

90. There are nine elements to common law fraud: (1) a representation of fact; (2) its falsity; (3) its materiality; (4) the representor's knowledge of its falsity or ignorance of its truth; (5) the representor's intent that it should be acted upon by the person in the manner reasonably contemplated; (6) the injured party's ignorance of its falsity; (7) the injured party's reliance on its truth; (8) the injured party's right to rely thereon; and (9) the injured party's consequent and proximate injury.

Old Dominion and FEMA committed common law fraud by:

a. Representing that the flood insurance policy that it issued provided for building coverage and that such coverage could be utilized by the insured at the time of the loss.

b. Selling a flood insurance policy and collecting premiums from the Plaintiffs and Class members that did not provide building coverage for the amount purchased and did not provide primary coverage that would have allowed the Plaintiffs to utilize the

coverage upon incurring a loss.  The policies sold by Old Dominion and FEMA are often in an amount in excess of the amount allowed under the National Flood Program when combined with the coverage sold to condominium associations under their master policies, which practice has resulted in policies being issued for which premiums were paid for coverage that federal law does not allow.

c.  The representation of building coverage by Old Dominion and FEMA was a material fact as the flood insurance policy would not have been purchased by the Plaintiffs and Class members had they known that Old Dominion and FEMA would not provide building loss coverage at the time of loss.

d.  Old Dominion and FEMA sold to the Plaintiffs and Class members a flood insurance policy intentionally knowing that building coverage would not be provided at the time of loss and with reckless behavior.  It was well known that individual condominium flood insurance policies were being issued and sold to individual condominium owners where there was only an illusion of coverage whereas, in truth, coverage would be denied for being duplicative and excessive at the time of loss.

e.  Old Dominion and FEMA induced the Plaintiffs and Class members to purchase building coverage under the flood policy with the reasonable expectation of Plaintiffs and Class members to be able to utilize the building coverage upon incurring a flood loss.

f.  Plaintiffs and Class members did not know of the falsity of Old Dominion's and FEMA's representations and believed that by purchasing building flood insurance that they would be covered for

flood losses to the condominium unit under the policy that was purchased from Old Dominion and FEMA.

g.    The Plaintiffs and Class members relied upon the representations of Old Dominion and FEMA that building coverage was being procured under their individual flood policy.  By purchasing a flood insurance policy that specifically provided for building coverage and paying premiums to Old Dominion and FEMA specifically for such building coverage, it is reasonable without independent inquiry or investigation, that coverage would be extended under the flood insurance policy.

h.  The Plaintiffs and Class members relied upon Old Dominion's and FEMA's representations that it would provide building flood insurance under its policy.  The Plaintiffs and Class members had no knowledge and would not have discovered by the exercise of ordinary prudence that Old Dominion and FEMA was selling a flood insurance policy that provided for building coverage when Old Dominion and FEMA did not provide coverage.

i.  The Plaintiffs and Class members were damaged by Old Dominion's and FEMA's fraudulent conduct in that upon incurring a flood damage loss, FEMA and Old Dominion would not and will not provide building insurance coverage.


COUNT III

<u>BREACH OF THE DUTY OF GOOD FAITH</u>

<u>AND FAIR DEALING</u>

91.  Plaintiffs and the Class incorporate by reference each

24

preceding and succeeding paragraph as though fully set forth at length herein.

92. Every insurance contract contains an implied covenant of good faith and fair dealing.

93. Defendants, Old Dominion and FEMA, breached the covenant of good faith and fair dealing by selling an insurance product that was misleading and fraudulent.

94. Defendants, Old Dominion and FEMA, acted in bad faith and/or with a malicious motive to Plaintiffs and Class members in collecting premiums and commissions on insurance policies that provided duplicative coverage, excessive coverage, or no coverage at all, thereby causing them injuries in an amount to be determined at trial.

## INDIVIDUAL CAUSES OF ACTION

### COUNT IV

### BREACH OF CONTRACT

95. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

96. Old Dominion breached its contract of insurance with Plaintiffs by:

25

failing to promptly and reasonably adjust the claim;

failing to properly train and/or instruct its adjusters and/or agents;

failing to provide uniform and/or standard guidelines and/or materials to adjusters and/or agents to properly evaluate claims (coverage);

failing to timely provide sufficient funds for the repairs and replacement of the subject property;

failing to promptly adjust and properly pay for building coverage under the policy;

failing to promptly adjust and properly pay for condo loss assessment coverage under the policy; and

any other acts or omissions to be shown at trial on the merits.

### COUNT V
### COMMON LAW FRAUD

97. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

98. Old Dominion and FEMA committed common law fraud by:

   a.   Representing that the flood insurance policy that it issued provided for building coverage in the amount of $104,100 and that such coverage could be utilized by the insured at the time of the loss.

   b.   Selling a flood insurance policy and collecting premiums

26

from the Plaintiffs that did not provide building coverage for the amount purchased and did not provide primary coverage that would have allowed the Plaintiffs to utilize the coverage upon incurring a loss. The policy sold by Old Dominion was in an amount in excess of the amount allowed under the National Flood Program when combined with the coverage sold to Casa Clara Condominium Association Inc. which resulted in a policy being issued for which premiums were paid for coverage that federal law does not allow.

c.   The representation of building coverage by Old Dominion was a material fact as the flood insurance policy would not have been purchased by the Plaintiffs had they known that Old Dominion would not provide building loss coverage at the time of loss.

d.   Old Dominion sold to the Plaintiffs a flood insurance policy intentionally knowing that building coverage would not be provided at the time of loss and with reckless behavior. It was well known that individual condominium flood insurance policies were being issued to individual condominium owners where there was only an illusion of coverage whereas in reality coverage would be denied for being duplicative and excessive.

e.   Old Dominion and FEMA induced the Plaintiffs to purchase building coverage under the flood policy with the reasonable expectation of Plaintiffs to be able to utilize the building coverage upon incurring a flood loss.

f.   Plaintiffs did not know of the falsity of Old Dominion's and FEMA's representations and believed that by purchasing building flood insurance that they would be covered for flood losses to the

condominium unit under the policy that was purchased from Old Dominion.

g.   The Plaintiffs relied upon the representation of Old Dominion that building coverage was being procured under their individual flood policy.  By purchasing a flood insurance policy that specifically provided for building coverage and paying premiums to Old Dominion specifically for such building coverage, it is reasonable without independent inquiry or investigation, that coverage would be extended under the flood insurance policy.

h.   The Plaintiffs relied upon Old Dominion's and FEMA's representations that it would provide building flood insurance under its policy.  The Plaintiffs had no knowledge and would not have discovered by the exercise of ordinary prudence that Old Dominion and FEMA were selling a flood insurance policy that provided for building coverage when Old Dominion and FEMA did not provide coverage.

i.   The Plaintiffs were damaged by Old Dominion's and FEMA's fraudulent conduct in that upon incurring a flood damage loss, Old Dominion through its agent and adjuster, Sweet Claims Service, refused to provide an estimate of building damages as required by FEMA, and refused to provide building insurance coverage.   The Plaintiffs were required to expend their own personal funds to make flood damaged repairs to their unit without the benefit of the individual flood insurance that they purchased.

## COUNT VI

### NEGLIGENT REPRESENTATION

99.  Old Dominion further breached its contract with Plaintiffs and/or acted negligently by the following actions:

a. Failing to respond to written requests and correspondence in a timely manner;

b. Failing to properly and timely adjust this case consistent with insurance industry standards;

c. Failing to provide any reasonable basis for denying payment on this claim for months following the incident;

d. Failing to meet its duty owed to Plaintiffs to engage in good faith and fair dealings; and

e. Any other actions or omissions that will establish bad faith, breach of contract and/or negligence which will be proven at the trial on the merits.

## COUNT VII

### DECLARATORY JUDGMENT

100. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

101. Plaintiffs seek a declaratory judgment for the purposes of determining a question of actual controversy between the parties concerning their rights, obligations, and coverages under the

subject policy.

102. Plaintiffs seek a declaratory judgment for the purposes of determining a question of actual controversy between the parties concerning their rights, obligations, and coverages under the subject policy that the FEMA Administrator is violating 42 U.S.C. Section 4019(c).

103. Plaintiffs seek a declaration that the flood policy provides primary and not excess building coverage for the flood damage to the Plaintiff's condominium unit by Hurricane Irma.

104. Plaintiffs seek a declaration that 42 U.S.C. Section 4019(c) requires that coverage under the Old Dominion policy be primary and not excess.

105. Plaintiffs seek a declaration that the provision in Old Dominion's policy that provides "If there is other insurance in the name of your condominium association covering the same property covered by this policy, then this policy will be in excess over the other insurance" is void and unenforceable.

106. Plaintiffs seek a declaration that 42 U.S.C. Section 4019(c) voids and makes unenforceable Part VII, Paragraph C (2) concerning other insurance within Old Dominion's and FEMA's SFIP insurance policies.

COUNT VIII

VIOLATION OF THE NATIONAL FLOOD INSURANCE ACT,

CODE OF FEDERAL REGULATIONS AND FEDERAL

COMMON LAW

107. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

108. At all material times, Old Dominion negligently and in bad faith failed to adjust Plaintiffs' claims properly.

109. At all material times, Old Dominion and its agents violated the National Flood Insurance Act, the flood insurance regulations issued by NFIP, and federal common law.

110. Old Dominion violated the NFIA, flood insurance regulations, and federal common law and federal common law bad faith laws and state in the adjustment of Plaintiffs' flood claims and state bad faith laws in the sale of fraudulent insurance policies in the following non-exclusive particulars: (1) selling flood insurance policies for more coverage than is allowed under the NFIA, collecting premiums thereon for such excess coverage (1) failing to timely adjust Plaintiffs' flood claims; (2) failing to honor Plaintiffs' satisfactory proof of loss; (3) failing to properly train its adjusters and agents; (4) failing to provide its

31

adjusters and agents with proper uniform materials with which to properly evaluate claims; (5) failure to provide an estimate of building loss damages; (6) denying coverage as duplicative; (7) denying coverage as excess and not primary; (8) collecting commissions for non-existent coverage; and (9) any and all misconduct as becomes known before trial.

## COUNT IX

### PILOT'S NEGLIGENCE

111. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

112. Pilot failed to use reasonable care in the performance of its evaluation of the flood damages to the Plaintiffs' unit.

113. Pilot failed to use reasonable care in the performance of its evaluation of the flood damages to the Casa Clara Condominiums and the common elements of Casa Clara Condominiums.

114. Pilot failed to perform its appraisal services in accord with professional standards and to the degree and skill ordinarily employed by flood insurance adjusters under similar conditions and like circumstances.

115. Pilot failed to perform its appraisal services in accord with

the National Flood Program.

## COUNT X

### <u>SWEET'S NEGLIGENCE</u>

116. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

117. Sweet failed to use reasonable care in the performance of its evaluation of the flood damages to the Plaintiffs' unit.

118. Sweet failed to use reasonable care in the performance of its evaluation of the flood damages to the Casa Clara Condominiums and the common elements of Casa Clara Condominiums.

119. Sweet failed to perform its insurance adjustment services in accord with professional standards and to the degree and skill ordinarily employed by flood insurance adjusters under similar conditions and like circumstances.

120. Sweet's determination that Plaintiffs had no coverage under the building coverage that was purchased under the Old Dominion flood policy was improper and wrongful.

121. Sweet failed to perform its adjustment services in accord with the National Flood Program.

COUNT XI

<u>NFC'S NEGLIGENCE</u>

122. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

123. NFC failed to use reasonable care in the performance of its evaluation of the claim for flood damages to the Plaintiffs' unit.

124. NFC failed to use reasonable care in the performance of its evaluation of the flood damages to the common elements of Casa Clara Condominiums.

125. NFC failed to perform its services in accord with standards and to the degree and skill ordinarily employed by insurance claim servicers under similar conditions and like circumstances.

126. NFC failed to perform its services in accord with the National Flood Program.

127. NFC willfully and intentionally failed to comply with the provisions of the National Flood Program.

128. NFC willfully and intentionally failed to comply with the provisions of 42 U.S.C. Section 4019(c).

<u>Prayer for Relief</u>

Wherefore, Plaintiffs, on behalf of themselves and members of the Class, respectfully request that this Court:

A. determine that the claims alleged herein in Counts I, II and III may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. appoint Plaintiffs as the representatives of the Class and counsel as Plaintiffs designate with the approval of the Court as Class counsel;

C. award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs, individually and as a member of the Class, and Class members are entitled;

D. award pre-judgment and post-judgment interest on such monetary relief;

E. grant appropriate injunctive and/or declaratory relief, including without limitation, an order that requires FEMA and/or William B. Long as Administrator of FEMA to comply with the provisions of 42 U.S.C. Section 4019(c).

F. award reasonable attorney's fees and costs; and

G. grant such other relief that this Court deem appropriate.


Plaintiffs Demand a Jury on all issues so triable.

Dated: September 25, 2018

Andrew Shabshelowitz,
pro se
108 Blossom Road
Westport, MA 02790
Telephone: 508-675-7509
Fascimile: 508-675-8838
Email: andy.shabco@verizon.net


Laurette Shabshelowitz,
pro se
108 Blossom Road
Westport, MA 02790
Telephone: 508-673-3074
Email: LShab108@aol.com