**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 18-10202-CIV-MARTINEZ/AOR**

ANDREW SHABSHELOWITZ and
LAURETTE SHABSHELOWITZ,

*Pro se* Plaintiffs,

v.

OLD DOMINION INSURANCE COMPANY *et al*.,

Defendants.
_____/

**REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE came before the Court upon Defendant Old Dominion Insurance Company's ("Defendant" or "ODIC") Motion for Summary Judgment [D.E. 88]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Jose E. Martinez, United States District Judge [D.E. 76]. For the reasons stated below, the undersigned respectfully recommends that ODIC's Motion for Summary Judgment be GRANTED.[1]

**PROCEDURAL AND FACTUAL BACKGROUND**

On October 9, 2018, *pro se* Plaintiffs Andrew Shabshelowitz ("Mr. Shabshelowitz") and Laurette Shabshelowitz's ("Mrs. Shabshelowitz") (together, "Plaintiffs") commenced this action against ODIC and others, seeking to recover damages allegedly sustained by their condominium

---

[1] ODIC requested a hearing on its Motion for Summary Judgment, pursuant to Rule 7.1(b) of the Local Rules for Southern District of Florida (hereafter, "Request for Hearing"). See Mot. for Summ. J. [D.E. 88 at 24]. Although Plaintiffs did not respond to the Request, the undersigned exercises her discretion and denies the Request for Hearing. See S. D. Fla. L. R. 7.1(b)(2) ("The Court in its discretion may grant or deny a hearing as requested, upon consideration of both the request and any response thereto by an opposing party.").

as a result of Hurricane Irma striking the Florida Keys in 2017. See Complaint and Demand for Jury Trial (hereafter, "Complaint") [D.E. 1]. On December 18, 2018, Defendant Sweet Claim Service, Inc. ("SCS") was voluntarily dismissed from this action [D.E. 22]. On August 30, 2019, Plaintiffs' claims against Defendants Federal Emergency Management Agency ("FEMA"), Pilot Catastrophe Services, Inc. ("Pilot"), and National Flood Services, LLC ("NFS") were dismissed with prejudice [D.E. 72].

On June 27, 2019, ODIC filed its Rule 12(c) Motion to Dismiss Plaintiffs' Extra-Contractual Claims and Class Action Claims, seeking judgment on the pleadings to dismiss those claims (hereafter, "Partial Motion to Dismiss") [D.E. 62]. Specifically, ODIC sought "to dismiss the Plaintiffs' extra-contractual claims for misrepresentation, common law fraud, reliance, bad faith and/or malicious motive, declaratory judgment, punitive, incidental, consequential, general, and special damages, attorney fees, and pre-judgment and post-judgment interest" on the grounds that those claims were preempted by federal law. See Partial Mot. to Dismiss [D.E. 62 at 1–2].

On August 9, 2019, the undersigned issued her Report and Recommendation on ODIC's Partial Motion to Dismiss (hereafter, "Report and Recommendation") [D.E. 71]. The undersigned concluded that Plaintiffs' extracontractual claims were subject to preemption because they arose out of ODIC's handling and ultimate denial of Plaintiffs' flood insurance claim. See Report and Recommendation [D.E. 71 at 13]. Accordingly, the undersigned recommended dismissal of all of Plaintiffs' extracontractual claims against ODIC. Id. at 12–14. The undersigned further recommended that Plaintiffs' breach of contract claim against ODIC be allowed to proceed, and that, to the extent Plaintiffs were seeking to bring procurement-based claims against ODIC, they be granted leave to amend their Complaint to do so on an individual, rather than a class action basis. Id. at 13–14.

On August 30, 2019, the Court granted ODIC's Partial Motion to Dismiss by: dismissing Plaintiffs' extracontractual and class action claims against ODIC; limiting Plaintiffs' prayer for relief to the damages allowed for in their breach of contract claim; and granting Plaintiffs leave to amend their *pro se* Complaint to assert procurement-based claims against ODIC on an individual basis. See Order Adopting Magistrate Judge's Report and Recommendation [D.E. 72]

On September 18, 2019, Plaintiffs filed their Amended Complaint and Demand for Jury Trial (hereafter, "Amended Complaint") against ODIC, alleging as follows:

- On July 6, 2009, Plaintiffs purchased an individual Write-Your-Own ("WYO") flood insurance policy from ODIC for their condominium unit (hereafter, "Plaintiffs' Condominium"). The policy period was from July 6, 2009 to July 6, 2010 (hereafter, "Initial Policy").

- Plaintiffs purchased subsequent WYO flood insurance policies from ODIC, each providing one year's worth of coverage for Plaintiffs' Condominium, on July 6, 2010, July 6, 2011, July 6, 2012, July 6, 2013, July 6, 2014, July 6, 2015, July 6, 2016, July 6, 2017, and July 6, 2018 (hereafter, "Subsequent Policies").

- During the Initial Policy and Subsequent Policies periods, Plaintiffs' condominium association ("Association") purchased FEMA policies which provided building coverage for Plaintiffs' Condominium (hereafter, "Association's Policy").

- Under the National Flood Insurance Program ("NFIP"), an individual condominium unit can be insured with building coverage in an amount no greater than $250,000.

- The NFIP provides for primary flood insurance coverage and not excess insurance.

- ODIC and FEMA regularly and knowingly have sold and continue to sell flood insurance policies where building coverage on the insured property is in excess of the amount allowed under the NFIP.

- ODIC and FEMA sold a misleading insurance product in that building coverage was sold and purchased as primary coverage but such primary building coverage was not provided within the policies.

- On September 10, 2017, Plaintiffs' condominium building and their unit within the building were damaged by Hurricane Irma.

- Plaintiffs timely notified ODIC of the damage and filed a proof of loss.

- SCS was the adjusting company for Plaintiffs' policy with ODIC. The flood adjuster from SCS refused to provide to Plaintiffs an estimate of damage to the building portion of their unit.

3

- Pilot was the adjusting company for the Association's Policy. A flood adjuster from Pilot refused to provide an estimate of damage directly to the Plaintiffs and did not properly perform an inspection or assessment of damages to Plaintiffs' Condominium. Instead, the Pilot adjuster provided an assessment of damages sustained by Plaintiffs' Condominium to the Association in the amount of $100,361.57.

- On November 7, 2017, ODIC denied Plaintiffs' claim for damage to the building portion of their unit because the loss was covered by the Association's Policy.

- On December 26, 2017, ODIC again notified Plaintiffs that their claim for building coverage was denied.

- NFS was ODIC's agent for processing flood insurance claims. After reviewing Pilot's erroneous reports, NFS improperly determined that Plaintiffs had purchased duplicate and unenforceable coverage under the Plaintiffs' insurance policy with ODIC in effect at the time.

- NFS did not properly review the Proof of Losses submitted by the Plaintiffs.

See Am. Compl. [D.E. 75].

Based on these factual allegations, Plaintiffs asserted the following claims against ODIC:

- Count I – Breach of Contract;

- Count II – State Law Claim – Negligent Misrepresentation of Old Dominion - Procurement Claim; and

- Count III – State Law Claim – Violation of the Florida Deceptive and Unfair Trade Practices Act and Violations of Florida Insurance Code in the Sale of Insurance Policies - Procurement Claim.

Id. In their global prayer for relief, Plaintiffs sought: "all actual, general, special, incidental, statutory, punitive, and consequential damages to which they are entitled; an award of pre-judgment and post-judgment interest; reasonable costs; and such other relief that the Court deems appropriate." Id. at 35.

On June 26, 2020, ODIC filed its Motion for Summary Judgment arguing that it is entitled to judgment as a matter of law because:

- As to Count I (hereafter, "Breach of Contract Claim"), Plaintiffs failed to meet the conditions precedent to filing this lawsuit because they did not submit a complete and supported proof of loss; and

4

➢ As to Counts II and III (together, "State Law Claims"), Plaintiffs' claims are preempted.

See Mot. for Summ. J. [D.E. 88]. ODIC contemporaneously filed its Statement of Uncontested Material Facts (hereafter, "Statement of Undisputed Facts") [D.E. 89]. ODIC also filed the following supporting documents: Plaintiffs' respective deposition transcripts [D.E. 89-1, 89-7–89-9]; and J. Scott Lapines' Affidavit (hereafter, "Lapines Aff.") [D.E. 89-2–89-6].

On July 16, 2020, Plaintiffs filed their Opposition to ODIC's Motion for Summary Judgment (hereafter, "Response") [D.E. 91]. Plaintiffs did not file a Statement of Material Facts in opposition to ODIC's Statement of Undisputed Facts. On July 23, 2020, ODIC filed its Reply Memorandum (hereafter, "Reply") [D.E. 92].

## SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure (hereafter "Rule 56(a)"), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Fonseca v. Wal-Mart Stores, E., LP, No. 18-CV-62768, 2019 WL 7371813, at *2 (S.D. Fla. 2019) (quoting Anderson, 477 U.S. at 248). The party moving for summary judgment must support its assertion that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). When determining whether a genuine issue of material fact exists, courts "view all evidence and draw all reasonable

inferences in favor of the nonmoving party." Smith v. Royal Caribbean Cruises, Ltd., 620 F. App'x 727, 729 (11th Cir. 2015).

"After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Corbin v. Town of Palm Beach, No. 13-CV-80106, 2014 WL 866415, at *2 (S.D. Fla. 2014) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). When asserting that a material fact is genuinely disputed, the nonmoving party must support its assertion by either complying with Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure cited above or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)(A)–(B). "If the evidence advanced by the nonmoving party 'is merely colorable, or is not significantly probative, then summary judgment may be granted.'" Corbin, 2014 WL 866415, at *2 (quoting Anderson, 477 U.S. at 249-50). Additionally, "a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment." Sainz v. Cabarceno Enterprises, Inc., No. 14-CV-20608, 2015 WL 12551061, at *1 (S.D. Fla. 2015) (citing Anderson, 477 U.S. at 252).

## **THE NATIONAL FLOOD INSURANCE ACT ("NFIA")**

Under the NFIA, Congress authorized the creation of the National Flood Insurance Program ("NFIP"), a federally subsidized program that makes affordable flood insurance available to property owners in flood-prone areas. Wright v. FEMA, 913 F.2d 1566, 1568 (11th Cir. 1990). The purpose of the NFIP is to enable the public to overcome the devastation accompanying floods by providing "a reasonable method of sharing the risk of flood losses . . . through a program of flood insurance which can complement and encourage preventive and protective measures." 42 U.S.C. § 4001(a).

FEMA implements the NFIP, in part by devising a Standard Flood Insurance Policy ("SFIP"). Wright, 913 F.2d at 1568; Carneiro Da Cunha v. Standard Fire Ins. Co./Aetna Flood Ins. Program, No. 93-CV-1570, 1996 WL 819720, at *1 (S.D. Fla. 1996). "Homeowners may purchase SFIPs either directly from FEMA through the 'Direct Insurance Program' or from private property insurance companies authorized to write NFIP flood insurance through the 'Write Your Own' ('WYO') program." Carneiro Da Cunha, 1996 WL 819720, at *1; see also Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 165 (3d Cir. 1998). Companies that participate in the WYO program market sell SFIPs under their own names as the insurer, and arrange for the adjustment, settlement, payment and defense of all claims arising from the SFIPs, while the federal government is responsible for the administration of the NFIP and acts as the guarantor and reinsurer. McKee v. USAA Ins. Agency, Inc., No. 06-CV-156, 2007 WL 1229107, at *1. n.4 (N.D. Fla. 2007); see also Attia v. Wright Nat'l Flood Ins. Co., No. 18-CV-24065, 2019 WL 2617087, at *2 (S.D. Fla. 2019) ("The federal government pays all flood insurance claims and reimburses WYO carriers their costs, including defense costs, for the adjustment and payment of claims.").

## UNDISPUTED FACTS

ODIC argues that its Statement of Undisputed Facts should be deemed admitted because Plaintiffs violated Local Rule 56(a) of the Southern District of Florida (hereafter, "Local Rule 56(a)") by not filing their own Statement of Material Facts. See Reply [D.E. 92 at 2–4].

Local Rule 56(a)(1) and (a)(2) provide, in pertinent part:

> (1) A motion for summary judgment and the opposition to it shall each be accompanied by a separate and contemporaneously filed and served Statement of Material Facts. . . .

> (2) An opponent's Statement of Material Facts shall clearly challenge any purportedly material fact asserted by the movant that the opponent contends is genuinely in dispute. . . .

Id. Local Rule 56.1(c) of the Southern District of Florida (hereafter, "Local Rule 56.1(c)") further provides:

> (c) Effect of Failure to Controvert Undisputed Facts. All material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts, provided that: (i) the Court finds that the material fact at issue is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply.

Id. Because Plaintiffs failed to file a Statement of Material Facts controverting ODIC's Statement of Undisputed Facts, which, as noted above is properly supported by record evidence, the undersigned deems all of the facts set forth therein to be admitted pursuant to Local Rule 56.1(c). See Engel v. Experian Info. Sols., Inc., No. 04-CV-61380, 2005 WL 8155395, at *1 (S.D. Fla. 2005) (*pro se* plaintiffs are "charged with knowing and following the Federal Rules of Civil Procedure and the Local Rules of this Court.") (citing Burton v. U.S.F. Logistics, No. 03-CV-5301, 2005 WL 711576, at *3 (N.D. Ill. 2005) (failure to follow local rules not excused by party's *pro se* status)).

Therefore, the following facts (hereafter, "Undisputed Facts") are taken verbatim from ODIC's Statement of Undisputed Facts:

1. Plaintiffs are the owners of Condominium Unit 3-105 at Casa Clara Condominiums located at 201 E. Ocean Drive, Key Colony Beach, Florida 33051.

2. Plaintiffs purchased this unit in 2009, and upon that purchase, they became members of the Casa Clara Condominium Association, Inc.

3. At the time of the purchase, Plaintiffs contacted Services International Corp. d/b/a Insurance Associates ("Insurance Associates") to act as their insurance agent and acquire necessary property insurances.

4. Plaintiffs were informed that Casa Clara's "flood insurance was handled through Insurance Associates."

5. Through Insurance Associates, Plaintiffs acquired a NFIP SFIP with ODIC in 2009 and have consistently maintained one with ODIC since at least 2009.[2]

6. Plaintiffs only communicated with Insurance Associates when they obtained and subsequently renewed their NFIP SFIP.

7. On or around September 10, 2017, Plaintiffs' property sustained damage caused by flood due to Hurricane Irma.

8. Plaintiffs made a claim under their SFIP for their Irma loss, and ODIC was notified of their claim on or around September 15, 2017.

9. ODIC arranged for Sweet Claim Service, Inc. ("SCS") to investigate and adjust Plaintiffs' flood loss claim, ultimately recommending to ODIC that Plaintiffs' loss under Coverage B – Personal Property of their individual SFIP exceeded their policy limits of $27,600.00, which amount was paid

10. It was also determined that the damages under the Building Property portion of Plaintiffs' claim was subject to Casa Clara's NFIP Residential Condominium Building Association Policy ("RCBAP"), issued by a different WYO carrier, American Bankers Insurance Company of Florida ("American Bankers").

11. Plaintiffs' Coverage A – Building Property portion of their claim was denied via letter dated December 26, 2017, which stated, "[w]e have reviewed the Independent Adjuster's final report which indicates your unit is covered under the [RCBAP]. We are denying payment for damage to the building items, pursuant to the [SFIP]."

12. The SFIP states: "If there is other insurance in the name of your condominium association covering the same property covered by this policy, then this policy will be in excess over the other insurance."

13. Plaintiffs submitted a deficient Proof of Loss form, claiming their full Coverage A policy limits as the amount of their claim, but failed to submit any documentation supporting this amount.

14. Plaintiffs stated that their Proof of Loss was "being submitted without the benefit of receiving an estimate from our individual flood adjuster."

15. Plaintiffs' claim was denied via letter dated January 24, 2018, noting Plaintiffs had failed to submit documentation supporting their proof of loss.

16. Plaintiffs filed suit on October 9, 2018 against several entities, none of which were the Casa Clara Association or Casa Clara's flood insurer.

---

[2] ODIC's Statement of Undisputed Facts shows 2019 as the inception year, which is clearly a scrivener's error that the undersigned has corrected.

17. Plaintiffs did not submit any documentation supporting the amount claimed in their proof of loss prior to October 9, 2018.

18. Plaintiffs filed their Amended Complaint on September 18, 2019.

19. The Casa Clara Association had been paid on its NFIP SFIP claim for the building encompassing Plaintiffs' property.

20. Plaintiffs showed that the Association had received $1,698.288.60 in payments for covered damage to Building 3, of which $249,500.35 was related to Plaintiffs' unit.

21. The RCBAP maintained Coverage A limits of $7,503,000.00.

See Statement of Undisputed Facts [D.E. 89] (citations omitted).

## BREACH OF CONTRACT CLAIM (COUNT I)

ODIC seeks summary judgment as to Plaintiffs' Breach of Contract Claim, arguing that Plaintiffs did not meet all conditions precedent to filing suit because they failed to submit a proof of loss with supporting documentation as required by SFIP Article VII(R) and SFIP Article VII(J)(4). Mot. for Summ. J. [D.E. 88 at 8–14].

### I. Applicable Law

"Under the SFIP, an insured may not file suit for coverage unless it has complied with all requirements of the policy." 121 Duval Co., Inc. v. Am. Bankers Ins. Co. of Fla., No. 13-CV 10130, 2014 WL 11514597, at *2 (S.D. Fla. 2014) (Martinez, J.) (citing 44 C.F.R. § 61, App. A(1), Art. VII(R)). "In adjudicating flood insurance claims, the Eleventh Circuit has held that strict adherence to the proof of loss requirement is a condition precedent to recovery under the SFIP." 121 Duval Co., Inc., 2014 WL 11514597, at *2 (citing Sanz v. U.S. Sec. Ins. Co., 328 F.3d 1314, 1317–18 (11th Cir. 2003) ("[N]ot even the 'temptations of a hard case' should cause courts to read the requirements of a federal insurance contract with 'charitable laxity.'")) (quoting Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 386 (1947)). "Substantial compliance is not sufficient because any

payments to policy holders are drawn from the federal treasury." 121 Duval Co., Inc., 2014 WL 11514597, at *2 (citing Merrill, 332 U.S. at 385).

**II.     Analysis**

The SFIP provides, in pertinent part:

In case of a flood loss to insured property, you must:

***

4. Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:

> a. The date and time of loss;
>
> b. A brief explanation of how the loss happened;
>
> c. Your interest (for example, "owner") and the interest, if any, of others in the damaged property;
>
> d. Details of any other insurance that may cover the loss;
>
> e. Changes in title or occupancy of the covered property during the term of the policy;
>
> f. Specifications of damaged buildings and detailed repair estimates;
>
> g. Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
>
> h. Details about who occupied any insured building at the time of loss and for what purpose; and
>
> i. The inventory of damaged personal property described in J(3) above.

***

7. The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you complete it. However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.

44 C.F.R. § Pt. 61, App. A(1), Art. VII(J)(4) and VII(J)(7). The SFIP further states: "You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy." 44 C.F.R. § Pt. 61, App. A(1), Art. VII(R).

It is undisputed that "[p]laintiffs did not submit any documentation supporting the amount claimed in their proof of loss within the allowable time period." See Undisputed Facts ¶ 17 [D.E. 89 at 3]. That period was extended to one year from the date of loss for Hurricane Irma claims. See Ex. B-4 to Lapine Aff. [D.E. 89-6 at 2]. Plaintiffs counter that their Breach of Contract Claim does not fail because:

> (1) NFS "was in possession of an estimate of damage done by [Pilot] on behalf of the Association's flood insurer, American Bankers Insurance Company . . . . ascribing $116,944.38 of flood damage to Plaintiffs' unit, an amount in excess of the $104,100 claimed on the Proof of Loss[;]" and
>
> (2) "There is no dispute that [ODIC] did not provide to the Plaintiffs any estimate of building damage to the condominium unit as its adjuster, [SCS], said there was no building coverage under [ODIC]'s policy and refused to provide a building damage estimate . . . ."

See Resp. [D.E. 91 at 4–5]. Plaintiffs' arguments are facially defective, since they did not submit a Statement of Material Facts controverting ODIC's Statement of Undisputed Facts. Plaintiffs' arguments also fail on the merits.

*1.    NFS' possession of Pilot's estimate.*

The SFIP expressly states: "In case of a flood loss to insured property, *you* must . . . send *us* a proof of loss . . . which furnishes *us* with . . . detailed repair estimates . . . ." 44 C.F.R. § Pt. 61, App. A(1), Art. VII(J)(4) (emphasis added). The SFIP defines "you" and "us" as follows:

> In this policy, "you" and "your" refer to the insured(s) shown on the Declarations Page of this policy and your spouse, if a resident of the same household. Insured(s) includes: Any mortgagee and loss payee named in the Application and Declarations Page, as well as any other mortgagee or loss payee determined to exist at the time of loss in the order of precedence. "We," "us," and "our" refer to the insurer.

12

44 C.F.R. § Pt. 61, App. A(1), Art. II(A).  Here, Plaintiffs, not the Association, are the insured, and ODIC, not American Bankers Insurance Company, is the insurer.  See Undisputed Facts ¶ 5 [D.E. 89 at 1]; Ex. B-1 to Lapine Aff. [D.E. 89-3 at 1] (identifying Mr. Shabshelowitz as the insured). Accordingly, NFS' possession of Pilot's estimate, which was sent to a different WYO carrier by the Association, does not constitute strict adherence to the SFIP's proof of loss requirement.  121 Duval Co., Inc., 2014 WL 11514597, at *2; see also Monistere v. State Farm Fire & Cas. Co., 559 F.3d 390, 392 n.1 (5th Cir. 2009) ("The ultimate burden to prove damage fell on the insured, not [the insurer].").

> ## 2. *ODIC and SCS' failure/refusal to provide Plaintiffs with a building damage estimate.*

Pursuant to 44 C.F.R. § Pt. 61, App. A(1), Art. VII(7), Plaintiffs were required to send ODIC their proof of loss with the proper supporting documentation within the allowable time period "even if the adjuster [did] not furnish the form or help [them] complete it."  44 C.F.R. § Pt. 61, App. A(1), Art. VII(7); see also Suopys v. Omaha Prop. & Cas., 404 F.3d 805, 810 (3d Cir. 2005) ("The SFIP places the onus on the insured to file the proof of loss within [the allowable time period] regardless of the representations and assistance, or lack thereof, provided by the insurer or its adjuster.") (citing Phelps v. FEMA, 785 F.2d 13 (1st Cir.1986) (government insurance agency not barred from asserting defense of insured's failure to file written proof of loss even where misrepresentations of the agency induced the failure)).  Thus, any purported lack of assistance on the part of ODIC or SCS does not excuse Plaintiffs from their obligation to send OFIC a compliant proof of loss with the proper supporting documentation.  Suopys, 404 F.3d at 810.

Having fully addressed Plaintiffs' contentions, the undersigned concludes that ODIC is entitled to summary judgment as to Plaintiffs' Breach of Contract Claim due to their failure to

strictly adhere to the SFIP's proof of loss requirement. 121 Duval Co., Inc., 2014 WL 11514597, at *2.

## **STATE LAW CLAIMS (COUNTS II AND III)**

ODIC also seeks summary judgment as to Plaintiffs' State Law Claims as preempted by federal law, notwithstanding Plaintiffs' attempt to characterize them as procurement-based claims. See Mot. for Summ. J. [D.E. 88 at 15–17].

### **I.  Applicable Law**

The Supremacy Clause of Article VI of the Constitution provides that the laws of the United States "shall be the Supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST., Art. VI, cl. 2. Thus, state laws that "interfere with, or are contrary to the laws of Congress, made in pursuance of the [C]onstitution" are invalid. Gibbons v. Ogden, 22 U.S. 1, 211 (1824). A state law is "not superseded by federal law unless preemption is the clear and manifest purpose of Congress." Cliff v. Payco Gen. Am. Credits, Inc., 363 F.3d 1113, 1122 (11th Cir. 2004).

The SFIP provides, in pertinent part:

> This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the [NFIA] . . . and Federal common law.

44 C.F.R. § Pt. 61, App. A(1), Art. IX. When FEMA proposed the 2000 amendment to the SFIP, it "clarified the policy language pertaining to jurisdiction, venue and applicable law to emphasize that matters pertaining to the [SFIP], including issues relating to and arising out of claims handling, must be heard in Federal court and are governed exclusively by Federal law." Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co., 508 F.3d 1337, 1344 (11th Cir. 2007) (quoting 65 Fed. Reg. 34,824, 34,826–27 (May 31, 2000)).

The Eleventh Circuit has held that there is a clear intent that federal law governs disputes involving SFIPs. Wright, 913 F.2d at 1570–71. Thus, breach of contract actions involving SFIPs are governed by federal law. Id.; Jones v. Wright Nat'l Flood Ins. Co., No. 18-CV-1489, 2019 WL 957729, at *3 (M.D. Fla. 2019). Moreover, all extracontractual state law claims involving an SFIP's claims handling are expressly preempted by federal law. Jones, 2019 WL 957729, at *3 (citing Shuford, 508 F.3d at 1344) (holding that the plaintiff's tort claim of bad faith refusal to pay was preempted by federal law because it arose from the handling of a claim under an SFIP).

The Eleventh Circuit has not ruled on whether there is a distinction for preemption purposes between claims handling and procurement of NFIP policies. Roth v. Wright Nat'l Flood Ins. Co., No. 18-CV-21653, 2018 WL 8334079, at *3 (S.D. Fla. 2018). However, there is authority in other circuits for the proposition that the NFIA does not preempt state law claims "to the extent that they implicate [insurers'] acts or omissions regarding issuance of the policy because those claims are procurement-based, not claims-handling based." See Harris v. Nationwide Mut. Fire Ins. Co., 832 F.3d 593, 597 (6th Cir. 2016); see also Spong v. Fid. Nat'l Prop. And Cas. Ins. Co., 787 F.3d 296, 306 (5th Cir. 2015).

In this District, the Fifth Circuit's approach to differentiating between the two types of claims has been found to be persuasive. Roth, 2018 WL 8334079, at *3. The Fifth Circuit held that "the key factor to determine if an interaction with an insurer is 'claims handling' is the status of the insured at the time of the interaction between the parties. If the individual is already covered . . . the interactions between the insurer and insured . . . are 'claims handling' subject to preemption." Spong, 787 F.3d at 306 (holding that the plaintiffs could proceed with their state-law-based claims regarding their initial purchase of an SFIP because they were "potential future policyholder[s]" when their claims arose); see also Chaudhary v. Arthur J. Gallagher & Co., 2020

15

WL 6127936, at *4–5 (5th Cir. 2020) ("If the individual is already covered and in the midst of a non-lapsed insurance policy, the interactions between the insurer and insured, including renewals of insurance, are 'claims handling' subject to preemption.") (quoting Grissom v. Liberty Mut. Fire Ins. Co., 678 F.3d 397, 401 (5th Cir. 2012)).

**II.     Analysis**

"Plaintiffs acquired a NFIP SFIP with ODIC in 2009 and have consistently maintained one with ODIC since at least 2009." Undisputed Facts ¶ 5 (citing Lapine Aff. [D.E. 89-2 ¶ 10]). Because Plaintiffs were current policyholders who held non-lapsed policies at the time they purchased the Subsequent Policies, any interactions between them and ODIC constitute claims handling interactions and are thus subject to preemption. Spong, 787 F.3d at 306; Chaudhary, 2020 WL 6127936, at *4–5.

Moreover, with respect to the procurement of Plaintiffs' Initial Policy in 2009, their State Law Claims are barred by the applicable statutes of limitations. See Jacobs v. Unum Grp. Corp., No. 16-CV-633, 2017 WL 3726477, at *4 (M.D. Fla. 2017) ("Under section 95.11, Florida Statutes, a legal or equitable action founded on fraud shall be commenced within four (4) years.") (internal quotation marks and alteration omitted) (citing Fla. Stat. § 95.11(3)(j)); Padilla v. Porsche Cars N. Am., Inc., 391 F. Supp. 3d 1108, 1112 (S.D. Fla. 2019) ("The statute of limitations for Plaintiffs' claim under [the Florida Deceptive and Unfair Trade Practices Act] is four years.") (citing Fla. Stat. § 95.11(3)(f)).

Because Plaintiffs' purported procurement-based claims are either claims handling based or are barred by the applicable statutes of limitations, ODIC is also entitled to summary judgment as to Plaintiffs' State Law Claims.

**III.    ODIC's Additional Arguments**

ODIC further argues that it is entitled to summary judgment as to Plaintiffs' State Law

Claims because "the underlying element of misrepresentation is an impossibility" given that Plaintiffs never had any contact with ODIC; and "there can be no detrimental reliance in this NFIP context." See Mot. for Summ. J. [D.E. 88 at 17–23]. Initially, Plaintiffs' claims of misrepresentations made by ODIC are contradicted by the following Undisputed Fact: "Plaintiffs only communicated with Insurance Associates when they obtained and subsequently renewed their NFIP SFIP." Undisputed Facts ¶ 6 (citing Ex. A. to Lapines Aff. [D.E. 89-1 at 27:11, 28:4–7]). Moreover, assuming, *arguendo*, that ODIC did make misrepresentations to Plaintiffs, they are precluded from claiming detrimental reliance on those purported misrepresentations because Plaintiffs are presumed to have constructive knowledge of all of the rules and regulations associated with the SFIP. See Wright v. Allstate Ins. Co., 415 F.3d 384, 388 (5th Cir. 2005) ("Where federal funds are implicated, the person seeking those funds is obligated to familiarize himself with the legal requirements for receipt of such funds.") (citing Heckler v. Cmty. Health Servs. of Crawford Cty., Inc., 467 U.S. 51, 63 (1984) ("[T]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law.") (footnote omitted)); Cohen v. Allstate Ins. Co., 924 F.3d 776, 781 (5th Cir. 2019) ("[A]s a participant in the federal flood insurance program, [the insured] is presumed to have constructive knowledge of all rules and regulations associated with it.") (citing Heckler, 467 U.S. at 63); Cohen v. Allstate Ins. Co., No. 17-CV-2484, 2018 WL 1144761, at *9 (S.D. Tex. 2018) ("[P]laintiffs suing under the [NFIP] cannot 'claim ignorance of the statutes and regulations as an excuse' for relying on [WYO] carriers' agents' representations.") (quoting Spong, 787 F.3d at 309); Lawrence v. Fid. Nat. Ins. Co., No. 06-CV-1072, 2007 WL 1741785, at *6 (E.D. La. 2007) ("Because Plaintiffs did not properly familiarize themselves with the NFIP, they cannot successfully assert a detrimental reliance claim or any other extra-contractual state law claim."). Thus, ODIC is also

entitled to summary judgment on Plaintiffs' State Law Claims on these additional grounds.

## RECOMMENDATION

Based on the foregoing considerations, the undersigned **RESPECTFULLY RECOMMENDS** that Defendant's Motion for Summary Judgment [D.E. 88] be **GRANTED** and that final judgment on non-liability be **ENTERED** in favor of ODIC, the last remaining Defendant in this case.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Jose E. Martinez, United States District Judge. Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida this 16th day of November, 2020.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

Copies furnished via CM/ECF to:
United States District Judge Jose E. Martinez
Counsel of Record

Copies furnished by mail to:
Andrew & Laurette Shabshelowitz
108 Blossom Road
Westport, MA 02790